# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1884, IN THE SIXTY-
NINTH YEAR OF THE STATE.

---

No. 11,450.

## CAYLOR v. ROE.

MARRIAGE CONTRACT.—*Statute of Frauds.*—A simple contract of marriage
is not within the statute of frauds, and hence need not be in writing.

SAME.—*Antenuptial Contract.*—Antenuptial contracts, in consideration of
marriage, or in relation to real estate, are within the statute of frauds,
and must be in writing to be enforced.

SAME.—There can be no recovery for the breach of a contract, if any por-
tion of it is within the statute of frauds.

SAME.—At the time of entering into a verbal contract of marriage, and as
the condition upon which it was entered into, and in consideration of the
contemplated marriage, the parties orally agreed that in lieu of the inter-
est in his estate which she would have as his wife, she should accept certain
real estate and $1,000, which contract he agreed to have reduced to writing,
and submitted for her approval and signature before the marriage.

*Held,* that the agreement constituted one entire contract, the portion in
relation to the marriage settlement being a condition, and that, as the con-
tract was not in writing, no action can be maintained upon it.

STATUTE OF FRAUDS.—*Refusal to Reduce Contract to Writing.*—The statute of
frauds can not be used to cover the perpetration of a fraud, but the sim-
ple refusal of a party to have the contract reduced to writing is not
such a fraud as takes it out of the statute.

SAME.—*Pleading.*—The facts constituting fraud must be pleaded.

From the Randolph Circuit Court.

*E. L. Watson, J. S. Engle, M. B. Miller* and *J. E. Neff*, for appellant.

*W. A. Thompson* and *J. W. Thompson*, for appellee.

ZOLLARS, C. J.—Appellee recovered a judgment below for the breach of a marriage contract. The only question made here by appellant is as to the sufficiency of the second and third paragraphs of the complaint, to which a demurrer was overruled.

It is averred in the second paragraph, that, on the 30th day of June, 1882, the parties entered into a contract of marriage, to be consummated in the following July. The day in July is not named. Following these statements are the further allegations that at the time of entering into the marriage contract, appellant represented that he was a man advanced in years and of great wealth; that he had been married—had living children of that marriage—and that the marriage contract here was upon the *condition* that appellee should enter into a written antenuptial contract, by which she should accept certain described real estate and $1,000 in money in lieu of the interest she would have as appellant's wife in and to his estate, both real and personal, at the time of his death.

It is further averred that at that time it was further agreed that the written contract, when drawn up, should be submitted to a brother of appellee for approval before being signed by her. It is further averred, that from the making of the marriage contract until the bringing of this action, appellee has been ready and willing to enter into said written agreement, and to marry appellant, and that in July, 1882, the month agreed upon for the marriage, appellant refused, and has ever since refused, to marry her.

In the third paragraph the contract of marriage is set out as in the second. Following this, it is averred that at the time of entering into this contract, and as the *condition* upon which it was entered into, and in *consideration* of the contemplated marriage, the parties made an antenuptial contract, which con-

Caylor v. Roe.

tract appellant was to cause to be reduced to writing, and presented to appellee and her brother for their approval, and that it should be signed by the parties before the marriage. The terms of the marriage settlement here set out are, in the main, the same as stated in the second paragraph.

It is averred further, that with the intent to cheat and defraud appellee, appellant caused a contract to be reduced to writing (a copy of which is set out) and submitted it to appellee, which she declined to execute, because it was not the contract agreed upon, but another and different one, which, if executed, would have resulted in a fraud upon her rights under the antenuptial contract. It is further averred that the appellee has all the while been ready and willing to execute the contract as agreed upon, and to marry appellant, and that he has neglected and refused to have the real contract reduced to writing and executed, and has refused to marry her.

The contention of appellant is that the facts set up in each paragraph show that the agreement to marry, and the agreement in relation to the marriage settlement, make but one entire contract, and that as it is not in writing, under the statute of frauds, damages can not be recovered for a breach of it.

The contention on the part of appellee is that the facts show that two contracts were made, the contract of marriage being the principal contract, and that in relation to the property being collateral to it, and that hence damages may be recovered upon the breach of the marriage contract without reference to the other contract. We think that the position of appellant is the only tenable one.

It is averred in the second paragraph, as we have seen, that the marriage contract was upon the *condition* that appellee should execute the agreement in relation to the property, by which she should relinquish certain rights and acquire others. This agreement shows a conditional contract of marriage. The marriage was not to take place except upon the *condition* named. It is said in 2 Parsons on Contracts (7th ed.), p. 526, that " Mutual contracts sometimes contain a condition, the

breach of which by one party permits· the other to throw the contract up, and consider it as altogether null."

A contract to marry, like most other contracts, may be on condition. 1 Wait's Actions and Defenses, p. 724, and cases cited.

It could not be contended, with reason, that appellee, while asserting that the marriage contract was upon the *condition* that she should execute the contract in relation to the property, might refuse to execute that contract, and still insist upon damages because appellant refused to consummate the marriage. Such a refusal upon her part would, clearly, relieve him from all obligation and liability upon the contract of marriage. His promise of marriage was upon a condition; his contract was a conditional contract. To separate the condition from the contract of marriage would be to destroy that contract; *and to allow damages for the breach of the contract of marriage*, without reference to the *condition* upon which that contract rests, would be, to hold appellant liable upon a contract very essentially different from the contract agreed upon by the parties.

At section 140, in Browne on the Statute of Frauds, it is said : " It is clear that if the several stipulations are so interdependent that the parties can not reasonably be considered to have contracted but with a view to the performance of the whole, or that a distinct engagement as to any one stipulation can not be fairly and reasonably extracted from the transaction, no recovery can be had upon it, however clear of the statute of frauds it may be, or whatever be the form of action employed. The engagement in such case is said to be entire."

This furnishes a very good test as to whether or not a contract of different parts and items should be regarded as one entire contract. Under this test, the averments in each paragraph of the complaint show a single contract only, but of different items. It is very evident that the parties here contracted with a view to the performance of all of the stipulations, and not a part only.

Either party may insist upon the performance of the *condition*, if called upon to perform the contract. Appellant has the right to insist upon the performance of the *condition*, before he shall be made to respond in damages.

Appellee shows by the second paragraph of the complaint, that she has not performed that *condition*; and while she avers that she has been ready and willing to execute the contract in relation to the property, she does not undertake to furnish an excuse for her failure to do so, unless the statement that appellant has refused to marry her is a sufficient excuse. It is averred that the contract was to be reduced to writing, but there is no averment as to whose duty it was to have this done.

We hold that the agreements, as to the marriage and the property, constitute but one unwritten, conditional contract of marriage. See *Henry* v. *Henry*, 27 Ohio St. 121. There can be no recovery for a breach of this contract, if any portion of it is within the statute of frauds. *Rainbolt* v. *East*, 56 Ind. 538 (26 Am. R. 40); *Frank* v. *Miller*, 38 Md. 450; *Fuller* v. *Reed*, 38 Cal. 99; Browne Stat. Frauds, section 140, *et seq.*

It is well settled that simple contracts of marriage are not within the statute of frauds, and hence need not be in writing. *Short* v. *Stotts*, 58 Ind. 29; 2 Parsons Cont. (7th ed.) 73, and cases cited.

It is well settled too, that antenuptial contracts in consideration of marriage, or in relation to real estate, are within the statute of frauds, and hence, unless they are in writing, no action can be maintained upon them, either in the way of enforcing them, or for damages for a breach of them. Section 4904, R. S. 1881; *Flenner* v. *Flenner*, 29 Ind. 564; *Brenner* v. *Brenner*, 48 Ind. 262; *Rainbolt* v. *East, supra*; 2 Parsons Cont. (7th ed.) 71. See, also, *Huckleman* v. *Board, etc.*, 94 Ind. 36.

Properly interpreted, the second paragraph is, that a part of the contract of marriage was the further agreement that appellee should have certain specific real estate, and $1,000

in money, and no further portion of appellant's estate, and that this agreement should be reduced to writing.

If there were no averments as to the agreement being reduced to writing, it would be a simple case of an oral agreement in relation to real estate, which would be clearly within the statute of frauds.

The averment that the contract was to be reduced to writing and executed by appellee, we think, does not take the case out of the statute, and hence we conclude that the paragraph is insufficient as against the demurrer directed to it. Our reasons for so holding will further appear in the examination of the third paragraph of the complaint. That paragraph, like the second but in more explicit terms, avers that as the *condition* upon which the marriage contract was entered into, there was a verbal antenuptial contract in relation to the property that appellee was to receive in lieu of her prospective interest in appellant's estate; appellant was to have that verbal contract reduced to writing, and that, with intent to cheat and defraud appellee, he refused to do so, and substituted a different contract.

While fraud is charged upon appellant in not having the real antenuptial contract reduced to writing, no facts are stated showing any such fraud as the law recognizes in such a case. The facts stated show simply that appellant neglected and refused to have the real verbal contract reduced to writing and presented to appellee.

The statute of frauds is intended to be a shield to protect against fraud, and hence can not be used as a cover to protect the perpetration of fraud. *Teague* v. *Fowler*, 56 Ind. 569; *Arnold* v. *Cord*, 16 Ind. 177; *Gwaltney* v. *Wheeler*, 26 Ind. 415; *Butcher* v. *Stultz*, 60 Ind. 170; *Hunt* v. *Elliott*, 80 Ind. 245 (41 Am. R. 794); Waterman Spe. Perf. Con., section 248.

In accordance with this general doctrine, it has been held that a parol contract within the statute of frauds will be enforced against a party who fraudulently prevents the contract being reduced to writing. At sections 248 and 249 of Water-

man on Specific Performance of Contracts, the author, in speaking of the statute of frauds, says : "There remain to be considered certain exceptions in which a court of equity will enforce parol contracts, notwithstanding the statute. These are : 1st, where a written agreement has been prevented by fraud." "If the reduction of the contract to writing was prevented by the fraud of one of the parties, specific performance will be decreed, upon proof of the parol agreement and of the fraud. 'The rule that fraud takes the case out of the statute is too well settled to admit of doubt; and for the purpose of showing that fraud has been committed, or is being attempted, parol evidence has always been held to be admissible.'"

In the case of *Arnold* v. *Cord*, 16 Ind. 177, this court, in speaking of the statute of frauds, and fraud in preventing the reduction of contracts to writing, quoted from Hill on Trustees, side p. 152, as follows : "The court in all these cases acts upon the principle that the instruments which would have been executed, or would have existed, but for the fraud, are to be treated as if actually executed and existing."

In the case of *Teague* v. *Fowler*, 56 Ind. 569, the court quoted approvingly from Browne on the Statute of Frauds the following, in relation to a case cited by the author : "There was a verbal agreement for an absolute conveyance of land, and for a defeasance to be executed by the grantee; but he, having obtained the conveyance, refused to execute the defeasance, and relied upon the statute ; but his plea was overruled, and he was compelled to execute according to his agreement."

This same general doctrine has been approved in many other cases in this court, but in none of them, nor in the above authorities, has it been held that the simple failure or refusal to reduce a verbal contract to writing, unaccompanied by elements of estoppel, or other circumstances invoking the equitable powers of the court, is such a fraud as will authorize and justify the courts in excepting the contract from the operation of the statute of frauds.

In Browne on the Statute of Frauds, at section 439, it is

said: " The fraud against which equity will relieve, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, which, by reason of the statute, a party is not bound to perform for want of its being in writing. * * * But where there is no fraud, only relying upon the honor, word, or promise of the defendant, the statute making those promises void, equity will not interfere."

In Reed on the Statute of Frauds, at section 479, it is said that there are some American authorities which say that fraud in preventing the memorandum being made will take the case out of the statute. It is further said in the same section, that "According to the tendency of modern decisions, mistake, or even fraud, in not putting the contract in writing, will not create an exception to the statute of frauds. * * * Refusing to make the memorandum is not the same thing as actively preventing a memorandum being made, which would otherwise have been executed, and in an extreme case the latter act might make an exception to the statute of frauds; how the former ever can it is difficult to see." See, also, *Box* v. *Stanford*, 13 Sm. & M. 93.

The holding of the court in the case of *Bozza* v. *Rowe*, 30 Ill. 198, is summed up in the syllabus in the statement that " The refusal, by a vendor, to sign a memorandum in writing, is not a fraud, so as to take the case out of the operation of the statute of frauds."

The doctrine of the case of *Glass* v. *Hulbert*, 102 Mass. 24, is correctly summed up in section 444a of Browne on the Statute of Frauds, as follows : " In *Glass* v. *Hulbert* the Supreme Court of Massachusetts, by WELLS, J., said that it makes no difference whether the want of a writing was accidental or intentional, and that so long as the effect of the fraud or mistake extends no further than to prevent the execution, or withhold from the other party written evidence of the agreement, it does not furnish ground for the court to disregard the statute, and enter into the investigation of the oral agreement for the purpose of enforcing it."

Caylor v. Roe.

The holding in the case of *Chase* v. *Fitz*, 132 Mass. 359, is correctly stated in the syllabus, as follows : "An oral agreement to execute an antenuptial contract is within the statute of frauds ; and if an oral agreement to marry is dependent upon such an agreement, and a part of it, no action can be maintained upon it."

The contract of marriage in this case was connected with the agreement in relation to a marriage settlement, as in the case before us, and the claim was made that there was an agreement that the antenuptial contract should be reduced to writing. In speaking of this claim, the court said : " It would leave but little if anything of the statute of frauds to hold that a party might be mulcted in damages for refusing to execute in writing a verbal agreement which unless in writing is invalid under the statute of frauds. We therefore have no hesitation in determining that the defendant's testator entered into no valid engagement to marry, and that the marriage, if promised, was only one of a large series of stipulations and counter-stipulations dependent upon each other, and which required a writing for their validity."

The ruling of this court upon the point under examination is in accord with the foregoing authorities.

In the case of *Wilson* v. *Ray*, 13 Ind. 1, the court, by Mr. Justice WORDEN, said : " It can not readily be perceived how a fraudulent refusal to put the contract in writing can have the effect of putting it in writing. The object of the statute was to require written evidence of the terms of the contract, and thereby to prevent frauds and perjuries in establishing them by parol. The construction sought would not only defeat the object of the statute by permitting parol evidence of the contract, but would open the door to frauds and perjuries still wider, by permitting parol evidence of the fraud charged in refusing to put the contract in writing."

To hold that a party may recover, notwithstanding the statute of frauds, because the other party has neglected and refused to reduce the contract to writing, would be to hold,

practically, that a verbal contract may be enforced, although within the statute.

Not to extend this opinion further, we are constrained to hold that each of the paragraphs of the complaint sets up one single and entire contract; that the portion in relation to the property settlement is within the statute of frauds; that the refusal on the part of appellant to reduce that portion of the contract to writing is not such a fraud as will take the case out of the statute; and that hence the contract of marriage, as set up in these paragraphs, can not be enforced, and the demurrer thereto should have been sustained. The verdict is based upon the entire complaint. When this is the case, and either of the paragraphs is bad, the judgment will be reversed. *Pennsylvania Co.* v. *Holderman,* 69 Ind. 18.

The judgment is reversed, with costs.

Filed Dec. 31, 1884.