In the Matter of Proving the Last Will and Testament of MARGUERITE LINDEWALL, Also Known as MARGUERITE LINDE-WALL BATHELT, Deceased, as a Will of Real and Personal Property.*

JOHN PAUL BATHELT, JR., Appellant; LOUIS LORENCE, as Executor, etc., of MARGUERITE LINDEWALL, Also Known as MARGUERITE LINDEWALL BATHELT, Deceased, Respondent.

First Department, March 15, 1940.

*Eugene B. Winett* of counsel [*Gustave A. Gerber* and *Beatrice Densen* with him on the brief], for the appellant.

*Bernard Cahn* of counsel [*Rosenson & Lorence*, attorneys], for the respondent.

GLENNON, J. The appellant John Paul Bathelt, Jr., on July 13, 1938, pleaded guilty to the crime of murder in the second degree and was sentenced to imprisonment for life in the Commonwealth of Massachusetts. He married the deceased in July, 1937. She

* Revg. 172 Misc. 489.

died on March 6, 1939, in the county of New York leaving a last will and testament, dated November 3, 1938.

It is alleged in the petition in the probate proceedings that the deceased left no surviving spouse. The appellant has received notice of probate since he is a prospective beneficiary under the terms of the will of the deceased. Appellant filed an answer objecting to the probate of the will. A motion was made to strike out the objections upon two grounds, *first,* that the appellant was not and is not the widower or surviving husband of the deceased or one of her distributees; *second,* that he abandoned the decedent and neglected and refused to provide for her and, therefore, he lacked the status or the right to contest the probate of the will.

The surrogate concluded that the determination of the motion upon the latter ground was not essential since he decided that the appellant was civilly dead and " hence no longer occupies a status as distributee of deceased." In so holding we are of the opinion that the surrogate erred. While it is true that section 511 of the Penal Law of the State of New York provides that a person sentenced to imprisonment for life is thereafter deemed civilly dead, still it appears that no such provision can be found in the law of the Commonwealth of Massachusetts. Although the deceased, after the conviction and sentence of the appellant, could have entered into a valid marriage with another in this State pursuant to the provisions of the Domestic Relations Law, it does not follow therefrom that the appellant is not her surviving spouse.

It seems to us that subdivision 2 of section 6 of the Domestic Relations Law was designed to permit an innocent spouse to remarry while the guilty one was imprisoned for life because of his or her violation of the law. In the present case the decedent was not required to renounce her right to have the marriage between her and the appellant continue down to the time that her lips were sealed in death. If the decedent had seen fit to marry another, she could have done so. However, she did not choose to take advantage of the provisions of the Domestic Relations Law and, consequently, her marriage to the appellant continued in full force and effect.

It should be noted in connection therewith that the Legislature has provided under section 320 of the Correction Law that, among others, a husband or wife, where one has been sentenced to imprisonment for life in this State, may apply for the appointment of a committee of such person's estate. Apparently it was the legislative intent, as indicated in the Correction Law, that the marriage should continue for the purpose outlined therein since nothing is said concerning a former husband or a former wife. If the Legis-

lature so intended it might have provided by statute that, under the circumstances outlined herein, a marriage might be dissolved. In enacting section 58 of the Domestic Relations Law, which reads: " A pardon granted to a person sentenced to imprisonment for life within this State does not restore that person to the rights of a previous marriage or to the guardianship of a child, the issue of such a marriage," the Legislature simply was throwing additional safeguards around the non-offending spouse. Of course, the appellant here was not sentenced to imprisonment for life within this State as provided in this section and, furthermore, he was not pardoned within the State where he was convicted. Consequently, the point in reference thereto should have no bearing upon the issue except in so far as it may shed some light upon the question of legislative intent.

Stress has been placed by the respondent on the case of *Jones* v. *Jones* (249 App. Div. 470; affd., 274 N. Y. 574). There the defendant married one Montgomery in Virginia on September 28, 1911. Montgomery, in 1922, was convicted of a felony in the State of North Carolina and sentenced to death. After the judgment was affirmed on appeal, the Governor of North Carolina commuted the sentence to life imprisonment. Prior to the commutation, the felon's wife, Nellie, married Harry P. Jones in the State of New York with full knowledge on the part of both parties of the sentence which had been meted out to Montgomery. Jones lived with his wife until 1935, when difficulties arose, and as a result thereof, he commenced an action for an annulment upon the ground that at the time of the marriage Nellie Jones' husband was still living. Nellie Jones availed herself of the provisions of the Domestic Relations Law. She contended, in effect, that the marriage she entered into with Jones was valid since her former husband was serving a life imprisonment within the meaning of our statute. Both the Appellate Division and the Court of Appeals agreed with her contention and the result was that the complaint was dismissed. The conclusion reached in the *Jones* case should be confined to the facts which were before the court at that time for decision. It is not controlling here.

We have heretofore pointed out that there is no statutory provision to the effect that one sentenced to life imprisonment as a punishment for a crime in the Commonwealth of Massachusetts is civilly dead. While section 511 of the Penal Law of this State provides: " A person sentenced to imprisonment for life is thereafter deemed civilly dead," still, the section following provides: " A conviction of a person for any crime does not work a forfeiture of any property, real or personal, or of any right or

interest therein. * * *." Property rights undoubtedly grew out of the marital status of the appellant and the decedent. If that is so, the objections contained in the appellant's answer in the probate proceedings should not have been stricken out.

It seems to us that the same rule would govern if the appellant actually were confined, for the crime he committed, in the State of New York where he would be regarded as civilly dead, rather than in the Commonwealth of Massachusetts where he is civilly alive. While he would be precluded from instituting a suit during his period of incarceration, still, although civilly dead, he could be sued and naturally he would have the right to defend himself. (*Avery* v. *Everett*, 110 N. Y. 317, 332.) It must be borne in mind that in the probate proceedings the appellant is not the aggressor. He simply seeks to protect his property rights.

We next come to a consideration of the question whether or not appellant abandoned the decedent. While it is contended on the part of the respondent that the appellant was guilty of abandonment in that he committed a crime which resulted in a sentence confining him to a State prison for the rest of his natural life, still it may be that the appellant will be in a position to show that the decedent, from her point of view at least, did not feel that he in fact had abandoned her. Appellant has stated that his wife visited him on several occasions during his imprisonment and that, in addition thereto, he received communications from her of an endearing character. While the appellant might not be competent as a witness under section 347 of the Civil Practice Act to give testimony to bear out this statement, he may be in a position to call other disinterested witnesses to sustain his contention. If the statements contained in the affidavit of Maybelle T. Cleaver are correct, she would be competent to testify that she wrote the letter which is dated January 21, 1939, a short while before decedent died. The affidavit recites in part: " * * * The handwriting is mine, the words are those of the decedent. I am the ' Aunt May ' referred to in the letter. The decedent also told me that she sent birthday greetings as well as a valentine card to her husband, Paul Bathelt."

The letter of January twenty-first, to which the affiant referred, reads in part as follows:

" * * * You must not worry about me dear. I am doing my very best to keep those old fires burning even if the wood is scarce. And I'll be just as happy and rejoice even more to be together again. Even on an old farm. * * *

" I loved getting your last letter and I am sure I have read it over a dozen times, wouldn't it be wonderful if we were able to be together and enjoy all those plans you write about.

" Now my dear, I am going to let Aunt May seal this with love and kisses and some day I hope to write you a long letter.

" MARGO."

A question might arise as to the sufficiency of the proof concerning the card received by the appellant on Valentine's day. The copy in the record indicates that over two hearts, which are bound by a ribbon, appear the names " Margo " and " Paul." Finally, the card with the words, " Love — Always — Margo," dated February twenty-fifth, which, it may be noted, was sent within ten days before the death of appellant's wife, may or may not be admissible, depending upon the proof to be offered. If the appellant meets with success in the introduction of his evidence, then it would be difficult to say that deceased, apparently a woman of means, had believed that her husband abandoned her.

We have reached the conclusion, therefore, that the order as entered should be reversed, with twenty dollars costs and disbursements to the appellant, and the proceeding remitted to the Surrogate's Court of the county of New York.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion denied, and proceeding remitted to the surrogate of the county of New York.