In the Matter of the Will of MARGUERITE LINDEWALL, Deceased.

LOUIS LORENCE, as Executor, Appellant; JOHN P. BATHELT, JR., Respondent.

Submitted October 8, 1941; decided January 15, 1942.

*Bernard Cahn* for appellant. A life felon is civilly dead and as a consequence his pre-existing marriage is *ipso facto* dissolved by virtue of his sentence. (*Avery* v. *Everett,* 110 N. Y. 317; *Matter of Gargan* v. *Sculley,* 82 Misc. Rep.

667; *Bond* v. *Bond,* 162 Misc. Rep. 449; *Jones* v. *Jones,* 249 App. Div. 470; 274 N. Y. 574; *Brookman* v. *Brookman,* 161 Misc. Rep. 741; *Matter of Donnelly,* 125 Cal. 417.) The imposition of the life sentence in Massachusetts is of no moment; the New York law applies and it prescribes civil death on such a state of facts. (*Atherton* v. *Atherton,* 181 U. S. 155; *Haddock* v. *Haddock,* 201 U. S. 562; *Matthews* v. *Matthews,* 247 N. Y. 32; *May* v. *May,* 233 App. Div. 519; *Coler* v. *Corn Exchange Bank,* 250 N. Y. 136; *Jones* v. *Jones,* 249 App. Div. 470; 274 N. Y. 574; *Panko* v. *Endicott Johnson Corp.,* 24 Fed. Supp. 678.)

*Eugene B. Winett* for respondent. The respondent is not civilly dead, and his marriage to the decedent was not dissolved *ipso facto* by virtue of his life sentence. (*Panko* v. *Endicott Johnson Corp.,* 24 Fed. Supp. 678; *Logan* v. *United States,* 144 U. S. 263; *People* v. *Gutterson,* 244 N. Y. 243; *Hine* v. *Simon,* 95 Okla. 86; *State Board* v. *Hays,* 190 Ky. 147; *Hall* v. *Crook,* 144 Minn. 82; *Grooms* v. *Thomas,* 93 Okla. 87; *Haynes* v. *Peterson,* 125 Va. 730.) The Penal Law of the State of New York does not work a forfeiture of the respondent's rights. (*Avery* v. *Everett,* 110 N. Y. 317.) The marriage of the appellant and the decedent was not dissolved and continued in force until her death. (*Matter of Gargan* v. *Sculley,* 82 Misc. Rep. 667; *Brookman* v. *Brookman,* 161 Misc. Rep. 741.)

CONWAY, J. There have been certified to us by the Appellate Division two questions. The first is:

" 1. Should the answer be stricken out and the objection to probate dismissed upon the ground that, upon the facts contained in the record, the respondent as matter of law was not the husband of the deceased at the time of her death? "

On June 27, 1937, the decedent, Marguerite Lindewall, married the objectant, John Paul Bathelt, Jr., in the State of New York and they lived in New York city until June, 1938. Decedent had always been and continued to be until her death on March 6, 1939, a resident of and domiciled

in this State. In the latter part of June, 1938, a cement-encased body was found in the Connecticut river at South Hadley, Massachusetts, and was identified as the body of one said to be a New York gambler. Investigation disclosed that he had been murdered a few days before Bathelt married the decedent. Further investigation by the Massachusetts authorities resulted in an indictment of Bathelt for murder in the first degree on July 12, 1938. On the following day he pleaded guilty to murder in the second degree and was sentenced to imprisonment in the State prison in Boston for the term of his natural life. He is still confined under that sentence.

In November, 1938, the decedent made a will in which she set up two trusts. After directing that her estate be divided into two equal shares she directed that the income from one share be paid to a friend during life and that the principal be paid over at death to a charitable institution. Income from the other share she directed to be paid as follows: Fifteen dollars monthly to Bathelt, whom she described as her former husband, during his life or so long as he should be confined in prison, for the purchase of conveniences and luxuries. The balance of the income she directed to be paid to the same charitable institution. The decedent also provided that, in order that the fifteen dollars per month might be paid, the principal of the second trust might be invaded. Upon Bathelt's death or upon his release from prison, the principal of that trust also passed to the same charitable institution.

The petition for probate of the will alleged that the deceased left no surviving spouse. Bathelt appeared by counsel and filed an answer asserting a statutory interest in the estate under section 83 of the Decedent Estate Law (Cons. Laws, ch. 13) and objecting to the probate of the will.

Although the decedent, in the paper offered for probate, referred repeatedly to Bathelt as her *former* husband, used her maiden name in subscribing her signature and initialed the document in five places with the initials of her maiden

name, she corresponded affectionately with Bathelt and there have been produced, as evidencing that fact, a New Year's day telegram, a birthday card, a post-card, two other cards containing poems and the printed words " To my Husband " and a letter, dictated to and written by another during her illness.

Section 511 of the Penal Law reads as follows: " Consequence of sentence to imprisonment for life. A person sentenced to imprisonment for life is thereafter deemed civilly dead."

There is presented for our determination the question of the effect of imprisonment for life upon the marital relation theretofore existing between the one so sentenced and his wife. It is urged by the respondent Bathelt that it has no effect but that the marital relation continues unless and until the innocent spouse remarries. The learned Appellate Division has agreed with him in that contention and has said that if the Legislature had wished " it might have provided by statute that, under the circumstances outlined herein, a marriage might be dissolved." (259 App. Div. 196, 198.)

It is true that the Legislature has not provided a remedy under these circumstances either by way of divorce or annulment but it has made other provisions which quite clearly indicate that it considered that for certain purposes a life sentence of the husband *ipso facto* terminated the marriage. For instance, Domestic Relations Law (Cons. Laws, ch. 14), section 6, subdivision 2, provides in substance that a marriage is void if contracted by a person whose husband or wife by a former marriage is living unless such husband or wife has been finally sentenced to imprisonment for life. A similar provision is found in the Penal Law with reference to the crime of bigamy. Penal Law, section 340, defines the crime of bigamy. Section 341, subdivision 4, provides: " The last section does not extend: * * * 4. To a person whose former husband or wife has been sentenced to imprisonment for life." The Legislature by failing to provide a remedy and by these provisions

of the Domestic Relations Law and the Penal Law quite evidently intended that civil death, at least so far as the instance where the exceptions were applicable, terminated the marriage.

Historically, however, it seems equally clear that there is not a dissolution of the marriage for all purposes by reason of civil death. Originally " civil death commenced, if any man was banished or abjured the realm by the process of the common law, or entered into religion; * * *." (Chase's Blackstone [4th ed.], p. 71.) Banishment, which was afterward merged in transportation, was inflicted at common law (1 Coke on Lyttleton, p. 155 [133a]) by act of Parliament and later, by statute, by direct sentence of a court in punishment for crime. (See *Rex* v. *Lewis*, [1832] 1 Moody's Crown Cases, 372; 168 Eng. Reprint, 1308.) If the husband were exiled by act of Parliament " but for a time, which some call a relegation, that is no civil death." (1 Coke on Lyttleton, p. 157 [136].) Abjuration of the realm was voluntarily accepted, with an accompanying oath to abjure the kingdom forever, to escape the heavier penalty of death and was later entirely abolished. (1 Bishop on Marriage, Divorce and Separation, § 1323; *Newsome* v. *Bowyer*, 3 P. Wms. 37, 38, note B.) Civil death also followed as a consequence of attainder for treason or commission of felony. (*Avery* v. *Everett*, 110 N. Y. 317, 323; *Jones* v. *Jones*, 249 App. Div. 470; affd., 274 N. Y. 574.) The common law consequences of a conviction for felony attached in this State and continued until abrogated by Constitution or statute. (2 Kent's Commentaries, p. 386.)

Prior to the Norman Conquest there had been no distinction between lay and ecclesiastical jurisdiction. Thereafter common law and ecclesiastical courts were separated. (*Short* v. *Stotts*, 58 Ind. 29, 35; 28 C. J. S. Ecclesiastical, p. 827, Historical note.) Ecclesiastical courts had sole and exclusive jurisdiction over matrimonial causes. That jurisdiction continued until after the establishment of the United States as a nation and the adoption of the common law of England by the separate states. (*McHie* v. *McHie*,

106 Ind. App. 152; 27 C. J. S. Divorce, § 69.) As a consequence, the "maxims, doctrines and practices of the ecclesiastical law of England have never become a part of our system of jurisprudence." (*Hutchinson Land Co.* v. *Whitehead Brothers Co.*, 127 Misc. Rep. 558, 562; affd., 218 App. Div. 682; *Short* v. *Stotts, supra.*) With us, dissolution of the marriage bond is permitted only by reason of statute law. Common law courts and courts of equity, however, apart from statute exercised jurisdiction over property rights which resulted from the marriage relation despite their lack of jurisdiction to dissolve or annul a marriage. Therefore, we find those courts declaring the law affecting rights of *property* following civil death although without power to determine whether civil death dissolved the marriage and without attempting so to do. Cases so decided are helpful by analogy in reaching a conclusion here.

One of the earlier cases was *Countess of Portland* v. *Prodgers* (1689) (2 Vernon's Ch. Rep. 104). The report states: " The question was touching the validity of the will of the Lady Sandys, her husband being by act of Parliament banished during life, she made a will and bequeathed several legacies, and whether she might so do or not was the question * * *. The court were of opinion that the husband being by act of Parliament banished for life, the wife might in all things act as a Feme Sole, and as if her husband was dead, and that *the necessity of the case* required she should have such power, and therefore decreed for the plaintiff." (Emphasis supplied.) (See, also, *Newsome* v. *Bowyer*, [1729] 3 P. Wms. 37.)

In North Carolina in 1777, during the Revolutionary War, one McNeil was called upon to take the oath of allegiance to the state or to depart. He refused so to do and was compelled to leave the state under the penalty established by law of incurring the crime of high treason if he returned. His wife remarried and conveyed by deed all her property and rights to property to her second husband. An action was then brought on behalf of the latter against

one alleged to be accountable to the wife for money and property due from the estates of her father and mother. Upon demurrer, the court said: " * * * we must take the facts stated in the bill; and although possibly the answer might vary the case so as to shew the plaintiff could not recover, yet as the bill states that M'Neil was perpetually banished, it follows that *except as to the objection of the marriage*, M'Neil is to be considered as to all purposes to be actually dead; and she as to all purposes as a feme sole, she may sue and be sued, acquire and transfer property: if she may do so by will, as stated in 2 Vern. [104], there is no reason why she may not also do so by deed." (Emphasis supplied.) (*Troughton's Admrs.* v. *Hill's Exrs.*, 3 N. C. 475.)

In South Carolina, in an action for an accounting, the court said: " Two questions were agitated in this case, which occupied a great deal of the time of the court unnecessarily. 1st, with respect to the light in which a woman is to be considered, whose husband is banished, and estate confiscated; and 2d, as to the husband's right to claim a life estate in property settled on marriage, he having survived his wife but is still in banishment. Both these points are extremely clear: the first, that she is considered as a feme sole, in every point of view; may contract debts, and acquire property, which she may again dispose of by deed or will. 2d, that the husband being banished, is considered as *civiliter mortuus*, and such rights as would have survived to him on the death of his wife, are extinct and gone with him; and the estate must consequently go to those to whom it is limited over." (*Wright* v. *Wright*, [1804] 2 Desaussure's Eq. Rep. [S. C.] 242, 244.)

In our own State in *Osborn* v. *Nelson* (1871) (59 Barb. 375, 381), in an action for work and labor, it was held that where a husband had many years before abandoned his wife and family, had ceased wholly to provide for them, had gone beyond the jurisdiction of our state and had ever since the abandonment remained in California, such action was equivalent to abjuring the realm at common

law " so as to enable the wife to sue and be sued as a *feme sole.* (*Chapman* v. *Lemon*, 11 How. Pr. 235; *Abbot* v. *Bayley*, 6 Pick. 89; *Gregory* v. *Pierce*, 4 Metc. 478.) "

These cases lead to the conclusion that civil death was given the same effect as actual death at common law and in equity only in so far as was required for the protection of wife or child. This would appear also to be the present legislative attitude since Correction Law (Cons. Laws, ch. 43), sections 320, 322, assumes the continuance of the marriage despite civil death so as to permit the husband or wife to apply to the Supreme Court for the appointment of a committee of the estate, both real and personal, of one sentenced to imprisonment in this State for life and for the payment of income or principal of such property for the support, education and maintenance of such persons as the convicted one would be legally liable to support if he had not been convicted. Correction Law, section 325, provides for the restoration of the felon's *property* upon pardon or commutation of sentence and discharge, the husband, of course, remaining responsible for the support of his wife and child subject, in so far as the wife is concerned, to her remarriage. A pardon granted to one sentenced to life imprisonment within this State does not restore that person to the rights of a previous marriage. (Dom. Relations Law, § 58.)

We shall now consider the statute law upon the subject. Our Revised Statutes (2 R. S. p. 701, § 20), afterward re-enacted in the Penal Code (§ 708), declared that a person sentenced to imprisonment for life " shall thereafter be deemed civilly dead." His political rights were taken from him, his wife and children owed him no fealty or obedience. (*Avery* v. *Everett*, 110 N. Y. 317, 333.) There was at common law no imprisonment for life. That punishment " was first prescribed by statute in 1796 (Chap. 30) and the attribute of civil death was attached thereto by specific and separate enactment, (Laws of 1799, chap. 57), to conform the new penalty to the common-law rule with reference to the punishment of other felonies, but only

' for greater caution.' (*Troup* v. *Wood, supra* [4 Johns. Ch. 228], page 248.) Civil death, at common law, followed as a consequence of conviction of felony punishable by death, and in that particular the common law has not been altered by statute, but remains the same." (*Jones* v. *Jones,* 249 App. Div. 470, 471; affd., 274 N. Y. 574.) The common law still holds one to be civilly dead who has been sentenced to death for felony. In other words, life imprisonment " not being a common-law penalty, but a statutory one, it was originally thought, for greater caution, that those upon whom this punishment was imposed should be formally classified *civiliter mortuus*." (*Jones* v. *Jones, supra,* p. 471.)

Some authorities have indicated that the marriage continues until the *election* of the innocent spouse to terminate it. (*Jones* v. *Jones, supra,* p. 472; *Matter of Gargan* v. *Sculley,* 82 Misc. Rep. 667; *Brookman* v. *Brookman,* 161 Misc. Rep. 741.) The meaning of the word election as so used is not entirely clear. It is urged that an election would be evidenced by the bringing of an action seeking a declaratory judgment. Certainly it would be disclosed by remarriage. It is also argued that it could be shown by acts which reached neither the dignity of court action nor the finality of remarriage. Let us then consider these methods.

An action seeking a declaratory judgment entails expense which it might not be within the power of many wives to meet. More important, however, seems the uselessness of the provisions of the judgment to be sought. What should it declare? That the husband is in prison for life? A certificate would show that. That he is civilly dead? The Legislature has declared that. What then? There can be nothing more. The life imprisonment is ground for neither divorce nor annulment. (Civ. Prac. Act, arts. 67 and 68.)

Shall we say that an election may be shown by other acts of the wife? What form would that election take? In one of the affidavits submitted here, counsel deposes that the decedent consulted him as to whether she should

obtain a divorce and that he told her that it " was not necessary for her to bring any action or legal proceedings against Bathelt but that she was free to remarry at any time she chose. She asked me what papers were necessary and I said that all she had to do was to present a certified copy of the certificate of conviction and sentencing to the marriage license bureau." Would that be considered an election despite her continued correspondence? Would the fact that she referred, in the paper offered for probate, to Bathelt as her *former* husband and that she signed and initialed it with her maiden name be considered an election?

If not, must we say that the only election she could make would be by a remarriage? If that were so, then a sensitive woman who had married one who had committed murder a few days before their marriage might shrink with horror from remarriage and, consequently, at her death would leave a spouse entitled to a portion of her estate, whereas another woman, less sensitive, by remarriage would cease to have a murderer as a husband. Again, no suitor might present himself under the circumstances or religious tenets might forbid remarriage. The termination of rights of property succession should not depend upon questions of fact or varying circumstances such as these.

We think there are many reasons why it is more logical to hold that it is the *sentence* of life imprisonment, with consequent civil death, which *ipso facto* acts upon and affects the marital relation at least to the extent of liberating the husband or wife of the one sentenced and the property of such husband or wife from all the *property* obligations and restrictions arising from the relation, rather than to have such liberation depend upon some subsequent act of the innocent spouse.

Two other questions remain to be considered. It is urged by Bathelt that the rejection of his answer works a forfeiture of his property. That is not so. Property passes at death only by reason of the Decedent Estate Law (§ 83). There are thus two applicable statutes: the Decedent Estate Law and the Penal Law. The former gives a right

of succession to a surviving spouse but the latter provides that one is not a surviving spouse who has been sentenced to life imprisonment. Such an one is dead civilly. There is no conflict and no forfeiture.

The other matter to be considered is that Bathelt was convicted in Massachusetts and that there is no provision in the statutes there similar to section 511 of our Penal Law. The answer is that the marriage between Bathelt and the decedent was performed in this State and that the decedent was a resident and domiciled here. This State possesses the right to fix, dissolve, terminate and regulate the marital relations of its citizens. (*Atherton* v. *Atherton,* 181 U. S. 155; *Haddock* v. *Haddock,* 201 U. S. 562, 569; *May* v. *May,* 233 App. Div. 519, 520.) We have held that life imprisonment in another state dissolves the felon's marriage in the eyes of our courts so as to permit remarriage by his wife. (*Jones* v. *Jones, supra.*)

The order of the Appellate Division should be reversed and that of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division payable out of the estate.

The first question certified is answered in the affirmative. The second question is not answered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur.

Ordered accordingly.