JOSEPH SHAPIRO, Plaintiff, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

Supreme Court, Special Term, New York County, November 22, 1943.

*William R. McDermott* for defendant.

*Sidney J. Loeb* for plaintiff.

WALTER, J. This action is brought upon the policies of insurance issued by defendant to plaintiff to recover disability benefits alleged to be due by reason of a total and permanent disability alleged to have occurred on January 15, 1935. After that date, but before the action was commenced, plaintiff was sentenced to a State prison under an indeterminate sentence of a minimum of twenty years and a maximum of life. Defendant moves to dismiss the complaint solely because of such sentence.

The action was brought in January, 1941. Defendant answered in August, 1941. Notice of this motion was served on September 16, 1943. The notice states that the motion is for dismissal " pursuant to Rule 113 of the Rules of Civil Practice ". Neither by answer nor by prior motion had defendant in any way challenged plaintiff's legal capacity to sue. The action was brought to trial in June, 1943, and resulted in a disagreement. Examination of the filed papers reveals that defendant knew of plaintiff's sentence to prison at least as long ago as April 14, 1943, and, also, that an order was made for the production of plaintiff upon the trial.

Counsel for plaintiff contends that the objection now raised by defendant is with respect to plaintiff's legal capacity to sue and that such objection has been waived by failure to raise it within the time provided by rule 107 of the Rules of Civil Practice. Much, doubtless, could be said in support of that contention. Nevertheless, if it be the law that plaintiff cannot sue because he is to be treated as dead, then the objection may be one going to jurisdiction and any judgment rendered might be regarded as void (cf. *McCulloch* v. *Norwood,* 58 N. Y. 562; *Sturges* v. *Vanderbilt,* 73 N. Y. 384; *Sinnott* v. *Hanan,* 214 N. Y. 454, dealing with judgments against dissolved corporations; and see *O'Brien* v. *Flynn,* 228 App. Div. 704; 34 C. J., Judgments, pp. 554–555, as to disability and death of natural parties). I hence must consider whether plaintiff's sentence of imprisonment is an obstacle to the maintenance of the action.

There still remains upon the statute books of this State this relic of medieval fiction: " A person sentenced to imprisonment for life is thereafter deemed civilly dead " (Penal Law, § 511). That provision has been said to be " simply declaratory of the common law " (*Avery* v. *Everett,* 110 N. Y. 317, 331), but it also has been pointed out that at common law there was no

imprisonment for life and that the common law attributed civil death to persons convicted of felony punishable by death. (*Matter of Lindewall,* 287 N. Y. 347, 355; *Jones* v. *Jones,* 249 App. Div. 470, 471, affd. 274 N. Y. 574.) Palpable anomaly inevitably results from attempting to attribute civil death, not only to persons about to be executed, but, also, to persons who may remain physically alive for many years and also may be paroled or pardoned. Still greater anomaly results from attempting to transplant the fiction of civil death to a land which has neither attainder, forfeiture, nor corruption of blood. (*Avery* v. *Everett, supra,* p. 324; Note, 50 Harv. Law Rev. 968.) And the common law itself was unable to avoid anomalies in attributing civil death to persons who had taken religious orders for the very obvious reason that " A fiction, however, which would regard a living man as dead must find that limits are set to it by this material world. A monk does wrong or suffers wrong; we can not treat the case as though wrong had been done to a corpse or by a ghost " (1 Pollock and Maitland, History of English Law [2d ed.], p. 435).

In New York at the present day it may be regarded as settled that the civil death which is consequent upon life imprisonment terminates the marriage of the convict " at least to the extent of liberating the husband or wife of the one sentenced and the property of such husband or wife from all the *property* obligations and restrictions arising from the relation " (*Matter of Lindewall,* 287 N. Y. 347, 357), and that it prevents him from having the status of an injured employee so as to be entitled to an award of compensation as such employee (*Matter of Pallas* v. *Misericordia Hospital,* 264 App. Div. 1, affd. 291 N. Y. 692), but that it does not divest him of his property (*Avery* v. *Everett, supra*). Further than that I cannot find that anything pertinent to this case is settled by any controlling authority. The books abound with statements that one civilly dead can bring no action (*Avery* v. *Everett, supra,* pp. 324, 325, is only one example among many), but the fact remains that no case has been cited or found in which any court has dismissed, because of civil death, any action based upon a contract or other property right which vested before the civil death occurred. *Green* v. *State of New York* (278 N. Y. 15) related to a claim by a convict sentenced for less than life, and all that was held was that his right to sue was merely suspended during the term of his sentence. *Bowles* v. *Habermann* (95 N. Y. 246) likewise related to a convict sentenced for less than life only.

To direct final dismissal of a suit to enforce an obligation

which accrued or a property right which vested before civil death occurred is equivalent to treating civil death as having operated to divest the convict of his property, and equivalent, also, to directing a forfeiture of the convict's property, for there plainly is no substantial difference between declaring a forfeiture in express terms and denying any right to recover property in the adverse possession of another or any right to enforce a vested cause of action. I consequently am of the opinion that to dismiss this action would be contrary to the express holding in *Avery* v. *Everett* (*supra*) that civil death does not divest the convict of his property, and contrary, also, to the express provision of section 512 of the Penal Law that "A conviction of a person for any crime does not work a forfeiture of any property, real or personal, or of any right or interest therein."

Defendant quotes an excerpt from the opinion in *Matter of Lindewall* (287 N. Y. 347, 357, 358, *supra*) as indicating that a dismissal of this action would not work a forfeiture, but such excerpt clearly indicates nothing of the kind. A life convict there objected to the probate of the will of the woman who had been his wife, and his answer containing the objections was stricken out because it was held that his life sentence had made her no longer his wife. In answering the palpably untenable contention that such striking out of his answer worked a forfeiture of *his* property, the court pointed out that it was the woman's property that was being dealt with, that the succession of her property was governed by the Decedent Estate Law, and that that law caused no part of her property to pass to the convict because of the holding there made that he was not a surviving spouse. There clearly was no forfeiture of the convict's property as a result of anything said or held in that case, and it is just as clear that nothing there said or held in any way detracts from the obvious fact that to dismiss the action at bar solely because of plaintiff's sentence would cause that sentence to operate as a forfeiture of such sum, if any, as plaintiff otherwise may be entitled to receive under the policies in suit.

But though plaintiff's sentence does not entitle defendant to a dismissal of the suit, for the reason that an absolute dismissal upon that ground would be equivalent to a forfeiture of the property right involved in the cause of action asserted, a question remains as to whether, the fact of the sentence having been formally suggested from the record, the suit can continue by or in the name of plaintiff.

*Avery* v. *Everett* (*supra*) contains statements indicating that a life convict may make a transfer of his property (see pp. 326, 333) but the point was not there directly involved. In *Bamman* v. *Erickson* (259 App. Div. 1040) the assignee of a convict was allowed to sue, but the convict in that case apparently was not a life convict. Whether or not this plaintiff could now assign his cause of action to some other person and such assignee could then be substituted as plaintiff thus appears to be undecided, and for a reason now to be stated I think it should not be decided now, as counsel for plaintiff in effect requested upon the oral argument.

*Avery* v. *Everett* (*supra*) was decided on October 2, 1888. In the opinion therein reference was made to an existing statute relative to the administration of the property of persons imprisoned for *less* than life (p. 332) — a subject now covered by article 14 of the Correction Law. The statement was then made that the statute indicated that the Legislature had the idea that a sentence of life imprisonment, with its consequence of civil death, operated to divest the offender of his estate (p. 332), and after pointing out that that idea was erroneous the court said (p. 333): "It is easy to suggest possible difficulties in the administration and protection of the property of a convict sentenced to imprisonment for life. These are matters which may be the appropriate subject of legislation." The very next year the Legislature enacted chapter 401 of the Laws of 1889, which now has been carried into article 13 of the Correction Law and which provides for the appointment of a committee of the real and personal property of any person sentenced to imprisonment in this State for life (§ 320). The statute would seem to have been enacted in response to the suggestion so made in *Avery* v. *Everett* (*supra*) as to the propriety of legislation providing for the administration of the property of life convicts, and a committee appointed under such statute has been held to be entitled to maintain a suit to recover property of the convict (*Trust Co. of America* v. *State Deposit Co.*, 187 N. Y. 178) and to represent the convict in an action to construe a will and settle the accounts of trustees having income to which the convict was entitled. (*Hill* v. *Guaranty Trust Co.*, 163 App. Div. 374.)

The existence of that provision of the Correction Law, the provision against forfeiture contained in section 512 of the Penal Law, and the numerous modern provisions respecting paroles and pardons, all show quite conclusively that, at least

as regards the property rights of a life convict, the provision that such a convict is to be deemed civilly dead now has a very limited application, and that the property of such a convict is to be administered by a committee appointed as provided in article 13 of the Correction Law.

The net result thus seems to accord with very early conceptions of civil death as applied to persons in religious orders, for in Pollock and Maitland's History of English Law (*op. cit. supra*, p. 435) we find this statement: " Our law did not say that a monk could not sue or be sued, it said he could not sue or be sued without his sovereign.''

The cause of action here asserted being one vested in plaintiff and not forfeited by his sentence of imprisonment, the commencement of the action in his name was not a jurisdictional defect but a mere irregularity, like the failure to appoint a guardian for an infant plaintiff, and such irregularity may be cured by the appointment of a committee as provided in article 13 of the Correction Law and the substitution of such committee as plaintiff. (*Rima* v. *R. I. Works*, 120 N. Y. 433.)

The motion to dismiss is accordingly denied, but the action necessarily remains in abeyance until a committee is appointed and substituted. If such appointment and substitution should be unreasonably delayed, defendant, of course, will be at liberty to make such further motion as it may be advised in order to secure final disposition if it deem the pendency of the action prejudicial to its interests.