Calvin JOHNSON et al., Plaintiffs,

v.

Nelson A. ROCKEFELLER, Governor, State of New York, Louis J. Lefkowitz, Attorney General, State of New York, and the State of New York, Defendants.

No. 72 Civ. 1699.

United States District Court,
S. D. New York.

Dec. 18, 1972.

Supplemental Opinion Jan. 23, 1973.

Herman Schwartz, Edward I. Koren,
Norman Rosenberg, Buffalo, N. Y., Mel-
vin Wulf, A.C.L.U., New York City, for
plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of
State of New York, New York City, for
defendants; Samuel A. Hirshowitz, First
Asst. Atty. Gen., Maria L. Marcus, Asst.
Atty. Gen., Stanley L. Kantor, Deputy
Asst. Atty. Gen., of counsel.

## MEMORANDUM

LASKER, District Judge.

Plaintiffs, Calvin Johnson, Wayne Trimmer, Raymond Smith, Charles Steadwell and Henry Carter, are felons confined in the Green Haven Correctional Facility. Defendants are the Governor, the Attorney General and the State of New York. Predicating jurisdiction on 28 U.S.C. §§ 2281 and 2201, plaintiffs seek injunctive and declaratory relief against the enforcement of New York Civil Rights Law §§ 79 and 79–a (McKinney Supp.1972) on the grounds that they violate the Fifth, Eighth and Fourteenth Amendments. In particular, plaintiffs challenge the provisions of New York's "civil death" statutes which deprive persons confined in state prisons of, among other things, access to the courts.[1]

Plaintiffs move to convene a three-judge court pursuant to 28 U.S.C. § 2281ff and for a class action determination.[2] Defendants cross-move to dismiss the complaint.

---

1. Section 79 provides:
"A sentence of imprisonment in a state prison for any term less than for life or a sentence of imprisonment in a state prison for an indeterminate term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced. . . . "
The section also specifies that a person whose sentence is suspended or who is placed on parole or discharged from parole may sue "with respect to matters other than those arising out of his arrest or detention." Section 79–a states that "[a]

person sentenced to imprisonment for life is thereafter deemed civilly dead" with the provisos that such a person may marry and may bring suit with respect to matters which do not arise from his arrest and detention while on parole or after discharge from parole.

2. In addition to the convening of a three-judge court and a class action determination, plaintiffs seek 1) a declaratory judgment that New York Civil Rights Law §§ 79 and 79–a, are unconstitutional; 2) a preliminary injunction against the enforcement of these provisions; 3) permission to proceed *in forma pauperis;* 4) the appointment of Herman Schwartz, Norman Rosenberg, Edward I.

■ In addition, Peter Butler, a felon confined at Green Haven, moves to intervene pursuant to Rule 24, Fed.R.Civ. P. His motion must be denied without prejudice on several grounds. First, he does not claim that the statute (§ 79–a) deprives him of the right to sue but rather of the right to marry, an issue not raised by the complaint except insofar as it seeks an injunction against the statute as a whole. Since denial of both the capacity to sue and to marry are collateral effects of imprisonment established by the same provision, it might have been proper to allow intervention were it not for another factor, namely, that Butler has already brought suit in the United States District Court for the Northern District of New York raising the very issue he seeks to interject here, a suit which we have no reason to believe is not still pending. (Letter of Dorothy Thorne, attached to *Affidavit* of Herman Schwartz supporting motion to intervene). Under the circumstances, to grant the motion would sanction a waste of critically limited judicial resources and would approach abuse of discretion.

## I. Motions to Dismiss and Abstain

Defendants move to dismiss as to Rockefeller and Lefkowitz on the ground that neither is responsible for administering and enforcing the challenged statutes and as to the state because it is not a "person" within the meaning of the Civil Rights Act and is immune under the Eleventh Amendment. They also contend that, since no plaintiff has yet been denied access to the courts (because none has brought suit), the complaint does not present a case or controversy, and the court, therefore, has no jurisdiction. Finally, they argue that, if the court has jurisdiction, it should abstain from exercising it because the questions presented have not been passed on by the state courts.

## A. Motion to Dismiss as to Rockfeller

■ Governor Rockefeller moves to dismiss because "he has no special responsibility for the enforcement of the statute." (Memorandum of Law in Support of Defendants' Motion to Dismiss at 2.) It is well established that a state officer is a proper defendant in a suit to enjoin the enforcement of a state statute only if he has "some connection with the enforcement of the act." *See, e. g.*, Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908); McCrimmon v. Daley, 418 F.2d 366, 368 (7th Cir. 1969); Socialist Workers Party v. Rockefeller, 314 F.Supp. 984, 988, n.7 (S.D.N.Y.1970) (three-judge court); City of Altus v. Carr, 255 F.Supp. 828, 835 (W.D. Texas 1966) (three-judge court).[3] Although the first case to spell out this requirement spoke in terms of a "special relation to the particular statute alleged to be unconstitutional" (Fitts v. McGhee, 172 U.S. 516, 530, 19 S.Ct. 269, 274, 43 L.Ed. 535 (1899)), that holding was qualified by Ex parte Young to the effect that "[t]he fact that the state officer by virtue of his office, has *some* connection with the enforcement of the act, is the important and material fact, and *whether it arises out of the general law, or is specially created by the act itself, is not material* so long as it exists." 209 U.S. at 157, 28 S.Ct. at 453 (emphasis added).

---

Koren and Melvin Wulf as counsel to plaintiffs; and 5) the addition of Russell G. Oswald as a defendant. The motions to proceed *in forma pauperis* and for the appointment of counsel are denied at this time for insufficient evidence of indigency. The motion to add Russell Oswald pursuant to Rules 19 and 20, Fed.R. Civ.P., is denied for the reasons stated in our dismissal of the suit against Attorney General Lefkowitz.

3. *See also* Fitts v. McGhee, 172 U.S. 516, 530, 19 S.Ct. 269, 43 L.Ed. 535 (1899); Oliver v. Board of Education, 306 F.Supp. 1286, 1288 (S.D.N.Y.1969); Coon v. Tingle, 277 F.Supp. 304, 306–307 (N.D.Ga.1967) (three-judge court); Camacho v. Rogers, 199 F.Supp. 155, 156–157 (S.D.N.Y.1961) (three-judge court).

The Governor of New York is charged by the state constitution with the duty to "take care that the laws are faithfully executed." N.Y.Const. Art. 4, § 3 (McKinney, 1969). As was decided in Socialist Workers Party v. Rockefeller, 314 F.Supp. 984, 988, n.7 (S.D.N.Y. 1970) (three-judge court), this constitutional mandate, without more, provides a sufficient connection with the enforcement of the statute to make Governor Rockefeller a proper defendant in this suit. *See also* City of Altus v. Carr, 255 F.Supp. 828, 834–835 (W.D. Texas 1966) (three-judge court). Accordingly, the motion to dismiss as to Rockefeller is denied.

*B. Motion to Dismiss as to Lefkowitz*

Plaintiffs contend that Attorney General Lefkowitz is a proper defendant since all of the named plaintiffs wish to sue the state and the Attorney General is obligated by law to "defend all actions and proceedings in which the state is interested." New York Executive Law § 63(1) (McKinney, 1972). That is, the Attorney General is the person who would enforce the statutes by raising them as a defense in the Court of Claims, if the plaintiffs sued the state there.

While this may be true, the argument misses the point at issue: The question is not whether the Attorney General would be obligated, if the plaintiffs at a future time institute suit against the state, to defend that suit, but rather whether he is obligated to enforce the statute here attacked. No such obligation exists and, accordingly, the motion to dismiss as to the Attorney General is granted.[4]

*C. Motion to Dismiss as to the State*

The claim against the state must be dismissed, since a state is not a person subject to suit under section 1983. Whitner v. Davis, 410 F.2d 24, 29 (9th Cir. 1969); Williford v. California, 352 F.2d 474, 476 (9th Cir. 1965). *See also* Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Zuckerman v. Appellate Division, 421 F. 2d 625, 626 (2d Cir. 1970). Even if this were not so, the state would be immune from suit by virtue of the Eleventh Amendment. Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Duhne v. New Jersey, 251 U.S. 311, 313, 40 S. Ct. 154, 64 L.Ed. 280 (1920); Fitts v. McGhee, 172 U.S. 516, 524–525, 19 S.Ct. 269, 43 L.Ed. 535 (1899); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

*D. Motion to Dismiss for Lack of Jurisdiction*

Defendants argue that the case before us is not a justiciable controversy because plaintiffs have not yet attempted to sue and therefore this suit is "premature". (Memorandum in Opposition to Plaintiffs' Motion for a Three-Judge Court at 6.) They contend that a genuine controversy can exist only in the event that plaintiffs actually brought suit in the state courts and were faced with the defense of lack of capacity to sue in response to which plaintiffs could attack the constitutionality of the civil death statutes. It is undeniable that under those circumstances a genuine controversy would exist both as to the constitutionality of the statutes and as to the merits of the state court suit. However, it is a misunderstanding of the requirements of justiciability to think that the former cannot exist independently of the latter.

The requirements of justiciability were stated in Aetna Life Insurance Co.

---

4. As a practical matter, even if the Attorney General were retained as a defendant, no order running against him could provide any greater relief to the plaintiffs than an order running against the Governor.

v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937):

> "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

The case at hand satisfies these requirements. The issue presented is a purely legal one and has been sharply delineated throughout its long application by the state courts. There is no doubt what the statute means and that its meaning does not depend on hypothetical facts which are not before this court. Plaintiffs wish to sue, now, in the state courts; the existence of the statutes, which defendant Rockefeller has a duty to enforce, makes it a foregone conclusion that these suits, if brought by plaintiffs before their release from prison, would be futile. This is a concrete, actual controversy between genuinely adverse parties which is susceptible to a final adjudication. The mere formality of bringing a state suit could not make the controversy pragmatically more immediate. The elements of justiciability being present, the motion to dismiss for lack of jurisdiction is denied.

### E.  Abstention

█ Defendants claim that the civil death statutes have not been construed by the New York Court of Appeals and that the lower court decisions are in conflict as to state prison inmates' right to sue. They suggest, accordingly, that this court should refrain from exercising its jurisdiction. It is true that New York's highest court has not pronounced on the constitutionality of the statutes;[5] it has, however, authoritatively construed them to deny state prison inmates access to the courts. Green v. State, 278 N.Y. 15, 14 N.E.2d 833 (1938). Moreover, the statutes have been in existence for almost a century and lower court decisions leave no doubt as to their effect on a felon's right to sue while confined in state prison.[6] The cases cited by defendant do not establish the contrary proposition; they merely hold that the disability is personal to the prisoner and does not bar from suing a person who derives his claim from the prisoner.[7] See discussion in Hewson v.

---

5. The constitutionality of Section 79 (then Penal Law of 1909, § 510) was upheld in Harell v. State, 17 Misc.2d 950, 188 N.Y.S.2d 683 (Ct. of Claims 1959).

6. See, e. g., Hewson v. State, 27 App.Div. 2d 358, 279 N.Y.S.2d 790 (4th Dept. 1967) ; In re Cirello's Estate, 50 Misc. 2d 1007, 271 N.Y.S.2d 841 (Surrogate's Ct.1966) ; Harell v. State, 17 Misc.2d 950, 188 N.Y.S.2d 683 (Ct. of Claims 1959) ; Quinn v. Johnson, 78 N.Y.S.2d 499 (Sup.Ct.1947) ; In re Weber's Estate, 165 Misc. 815, 1 N.Y.S.2d 809 (Surrogate's Ct.1938).

7. See Foster v. State, 205 Misc. 736, 129 N.Y.S.2d 418 (Ct. of Claims 1954) (guardian ad litem suing on behalf of infant reformatory inmate) ; Kugel v. Kalik, 176 Misc. 49, 25 N.Y.S.2d 327 (Sup.Ct.), aff'd, 262 App.Div. 823, 28 N.Y.S.2d 734 (1st Dept. 1941) (action

by receiver of involuntary assignment in bankruptcy) ; Bamman v. Erickson, 259 App.Div. 1040, 21 N.Y.S.2d 40 (2d Dept. 1940) (action by an assignee of the inmate). Shapiro v. Equitable Life Assurance Soc'y, 182 Misc. 678, 45 N.Y.S.2d 717 (Sup.Ct.1943), aff'd, 268 App.Div. 854, 50 N.Y.S.2d 846 (1st Dept. 1944), aff'd, 294 N.Y. 743, 61 N.E.2d 745 (1945), does not support defendants' position that state court construction is ambiguous, because in that case the plaintiff-inmate sued before his imprisonment when he was not under the statutory disability. See Hewson v. State, 27 App.Div.2d 358, 361, 279 N.Y.S.2d 790, 793 (4th Dept. 1967). A single Court of Claims case allowed a prisoner to sue after obtaining leave of a New York Supreme Court Judge. Cataliotti v. State, 61 Misc.2d 204, 305 N.Y.S.2d 28 (Ct. of Claims 1969). This case alone is not sufficient to render the statute's construction am-

State, 27 App.Div.2d 358, 279 N.Y.S.2d 790 (4th Dept. 1967).

Since the statute has been extensively construed by the state courts, abstention is clearly inappropriate. Moreover, the Court of Appeals for this circuit has recently held that "the decision to abstain is for the three-judge court, not for the single judge." New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419, 423 (2d Cir. 1972). Accordingly, this issue is reserved for further consideration by the three-judge panel.

## II. Motion to Convene a Three-Judge Court

In determining whether a three-judge court ought to be convened pursuant to 28 U.S.C. § 2281, the district court is limited to deciding whether the case raises a substantial constitutional question, provides a basis for equitable relief and otherwise meets the requirements of the three-judge statute. Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). The complaint here does allege a basis for equitable relief and the other requirements for convening a three-judge court, that the constitutional attack be against the statute's statewide application and that a state officer be named as a defendant (Ince v. Rockefeller, 290 F.Supp. 878, 881 (S.D.N.Y. 1968)), are met. The issue therefore is whether the attack on the statute raises a substantial constitutional question.

Plaintiffs contend that the statute violates the due process, equal protection and cruel and unusual punishment clauses. Since we find that the equal protection claim raises a substantial constitutional question, it is unnecessary at this time to determine the validity of the due process and cruel and unusual punishment theories.

It is true that the limitations of the equal protection clause leave to the states, without interference, a broad area of legislative determination.

As the Court stated in McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S. Ct. 1101, 1105, 6 L.Ed.2d 393 (1961):

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

See also Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Here, however, the grounds put forward by the defendants to justify denying to state prison inmates the right to sue which all other citizens enjoy appear to be irrelevant to the achievement of the state's own objective.

Defendants argue that the statute is justifiable because of administrative necessity, since the prison system does not have sufficient personnel to escort prisoners when court appearances might be necessary. The flaw in this argument is that conceding its validity does not justify the bar to instituting suit. The actions which defendants are prevented from bringing are civil suits at whose court proceedings their presence, although desirable, is not required. Plaintiffs do not claim that the state is obliged to produce them for court ap-

biguous, especially in view of O'Brien v. McGinnis, 63 Misc.2d 170, 311 N.Y.S.2d

553 (Sup.Ct.1970), which is to the contrary.

pearances, but merely that they are entitled to the choice of postponing their litigation or giving up their right to be present in court.

■ The defendants answer that allowing plaintiffs to sue while in prison, without giving them the opportunity to be present in court, would result in major inconveniences for both the inmate-plaintiffs and the non-inmate defendants. There is no denying the fact that some inconvenience to both parties is inevitable in the case of a prisoner-instituted suit. The inconvenience to a non-inmate defendant, however, appears insubstantial since he would rarely need to call the plaintiff as a witness and, if he did, arrangements for deposing an inmate in prison can be made. Furthermore, that the "inconvenience" is not critical is evidenced by the fact that the legislature has not barred non-inmates from bringing suit against inmates, although the problem of non-inmates as plaintiffs is greater than as defendants since they, rather than their inmate opponents, have the burden of proof. As to the obstacles faced by inmate-plaintiffs, it is sufficient to observe that the delay occasioned by the statute is in itself a serious barrier, because the inevitable loss of evidence hampers efforts to carry the burden of proof. Indeed it is a complete bar in some cases, since the statute of limitations is tolled for ten years only (CPLR § 208), so that those who are confined for more than ten years in effect forfeit their claims entirely.[8] Thus, if, as defendants imply, the statute is in part intended to protect prisoners from the inconvenience of litigating while deprived of their liberty, it is a misguided effort which takes away far more than it gives.[9]

Finally, we cannot overlook the notable fact that civil death statutes exist in only thirteen states.[10] That such a large majority of states function without such a statute does not, of course, establish conclusively that the New York law is invalid, but it does at least raise the question whether it bears a rational relationship to any state interest recognized in modern society or whether it is a residual anachronism of an age which took a significantly different approach to penology.[11]

The attitude of society towards its wayward members has undergone a radical transformation since the statute's enactment. The approach to the treatment of prisoners espoused in this century favors, whenever possible, rehabilitation followed by reabsorption into the community. See Williams v. New York, 337 U.S. 241, 248, 69 S.Ct. 1079, 93 L.

8. Another group of inmates have nothing to gain and everything to lose from the operation of Section 79–a, since persons sentenced to life imprisonment are deprived forever, by this section, of their right to sue regarding matters arising out of their arrest and detention.

9. It should also be noted that all the inconveniences entailed by inmate suits are present in suits brought by confined misdemeanants, which are permitted.

10. Alaska Stat. §§ 11.05.070, .080 (1962); Ariz.Rev.Stat.Ann. §§ 13–1653, subsecs. A, B (1956); Cal.Penal Code § 2600 (West Supp.1968); Idaho Code Ann. § 18–210 to –311 (1948); Mo.Ann.Stat. § 222.010 (1959); Mont.Rev.Codes Ann. §§ 94–4720 to –4721 (1947); N.Y.Civ.Rights Law §§ 79, 79–a (McKinney Supp.1969); N.D. Cent.Code § 12–06–27 (1960); Okla.

Stat. tit. 21, §§ 65–66 (1958); Ore.Rev. Stat. § 137.240 (Supp.1967); R.I.Gen. Laws Ann. §§ 13–6–1 to –2 (1956); S.D. Compiled Laws Ann. § 23–48–35 (1967); Utah Code Ann. §§ 76–1–36 to –37 (1953). The Kansas civil death statute has recently been repealed. Ch. 180, § 21–4071, [1969] Kan. Laws, repealing Kan.Stat.Ann. § 21–118 (Supp.1969).

11. The original civil death statute was enacted in 1799. Hewson v. State, 27 App. Div.2d 358, 360, 279 N.Y.S.2d 790, 792 (4th Dept. 1967); The Collateral Consequences of a Criminal Conviction, 23 Vanderbilt Law Review 929, 950 (1970). Sections 79 and 79–a of the Civil Rights Law (McKinney Supp.1972) derive from Sections 510 and 511 of the Penal Law of 1909 which, in turn, came from Penal Code §§ 707–08, L.1881, c. 676.

Ed. 1337 (1949). Judged by these standards, civil death statutes, though once considered an appropriate means of accomplishing the then paramount goal of retribution, may no longer represent a rational and hence constitutional approach to penal legislation.

In any event, as Chief Judge Friendly has said, "[t]he issue here is not whether [the state statute] is unconstitutional but whether plaintiffs' claim of unconstitutionality [is] unsubstantial 'either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court [the Supreme Court] as to foreclose the subject.' California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 . . . (1938)." Latham v. Tynan, 435 F.2d 1248, 1252 (2d Cir. 1970) (dissenting opinion). Plaintiffs' claim satisfies this test of substantiality.

### III. Class Action Determination

There is no doubt that this is a proper class action. The requirements of Rules 23(a) and (b)(2) (Fed.R.Civ. P.) are amply satisfied. The proposed class consists of "all prisoners in the New York Prison System and who have or who will have a cause of action, civil or equitable in nature, while imprisoned . . . and are unable to sue because of the operation of Sections 79 and 79–a of the Civil Rights Law." (Complaint, III(c).) Plaintiffs estimate, on information and belief, that the class membership exceeds thirteen thousand. (*Id.* at III(b).) Regardless of the exact number, it is undeniable that joinder of all members is impracticable. The challenged provisions raise a question common to the class and the representative parties' claims are typical of the claims of all. The representative parties have competent counsel, experienced in this area of the law, and we think that they will fairly and adequately represent the interests of the class.[12] Finally (Rule 23(b)(2)), the defendants have acted on grounds generally applicable to the class, making appropriate injunctive relief with respect to the class as a whole.

Defendants' motion to dismiss is denied as to Governor Rockefeller, but is granted as to the State of New York and Attorney General Lefkowitz. Plaintiffs' motions to convene a three-judge court and for a class action determination are granted. The class is defined as proposed in the complaint.

It is so ordered.

---

12. Defendants argue that, although plaintiffs here wish to institute suits while in prison, other prisoners may wish to take advantage of the tolling of the statute of limitation for incarcerated persons (CPLR § 208) and sue after release, that this constitutes a conflict of interests, and that, as a result, plaintiffs will not fairly and adequately represent the entire class which they propose. This argument must be rejected for several reasons.

First, there is no cause to believe that striking down Sections 79 and 79–a will necessarily result in repeal of the tolling provisions. On the contrary, it is equally reasonable to assume legislative willingness to allow prisoners the option to sue while in prison or during a reasonable period thereafter, an approach which has been adopted in several states. *See, e. g.,* Colo.Rev.Stat. § 87–1–19 (1953); Ill.

Ann.Stat. ch. 83, § 22 (1966). Effective July 1, 1970, Kansas repealed its civil death statute (Ch. 180, § 21–4071, [1969] Kan.Laws, repealing Kan.Stat.Ann. § 21–118 (Supp.1969)) but kept its tolling provision (Kan.Stat.Ann. § 60–515 (Supp.1971)).

Second, the continued existence of the tolling provision and the benefits which flow from them go to the merits of plaintiffs' claim and are a factor to be considered in determining the reasonableness of the civil death statutes, rather than in delineating the composition of the class challenging the statutes.

Third, the tolling provision of Section 208 is limited to ten years. Thus, at least as to those prisoners incarcerated for more than ten years, there is no advantage in awaiting release to bring suit since their claims would then be barred.

## Supplemental Opinion

This suit, seeking injunctive and declaratory relief against the enforcement of New York Civil Rights Law §§ 79 and 79–a (McKinney Supp. 1972), originally challenged the constitutionality of the statutes insofar as they deprived convicted felons of access to the courts. The named plaintiffs moved for the convening of a three-judge court and, while the matter was *sub judice,* one Peter Butler, also a convicted felon, moved to intervene claiming that the statute deprived him of the right to marry. We held in a prior opinion (December 18, 1972) that the challenge to the statutes insofar as they deprived convicted persons of access to the courts presented a substantial constitutional question and a three-judge court has been convened to consider it. We denied Butler's motion to intervene on the grounds that there was pending at the time an identical suit brought by him in the Northern District of New York and that the complaint in this action did not cover the subject raised by him. Plaintiffs have now amended their complaint as of right (no answer having yet been filed), and move for a three-judge court to challenge those provisions of the statute which deprive felons confined in state prisons of the right to marry. We are also advised that Butler's case in the Northern District of New York (Butler v. Rockefeller, Civil 1971—363) was voluntarily dismissed on June 23, 1972.[1]

Defendant does not oppose submission of this issue to the same three-judge court which has been convened to consider the initial attack on the civil death provisions. Since deprivation of the right to marry raises a substantial constitutional question, submission of this issue to the three-judge court is required.

Marriage may well be a more fundamental right than access to the courts. Holding that the latter is not under all circumstances a fundamental constitutional right, nevertheless, the Supreme Court has recently said:

> "The denial of access to the judicial forum in Boddie [v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)] touched directly . . . on the marital relationship and on the associational interests that surround the establishment and dissolution of that relationship. On many occasions we have recognized the fundamental importance of these interests under our Constitution. See, for example, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Skinner v. Oklahoma, 316 U.S. 535, 62 S. Ct. 1110, 86 L.Ed. 1655 (1942); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The *Boddie* appellants' inability to dissolve their marriages seriously impaired their freedom to pursue other protected associational activities." United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (January 10, 1973).

Thus, "[m]arriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival." Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). It is a constitutionally protected associational activity (United States v. Kras, *supra,* 409 U.S. 434, 93 S.Ct. 631) and is intrinsically related to the right to privacy (Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510

---

1. Butler has moved the court to reconsider its decision denying his motion to intervene. Since the amended complaint names him as a plaintiff, his motion is now moot, and it is denied.

(1965)) and the right to bear children (Skinner v. Oklahoma, 316 U.S. 535, 536, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)). As such, it is a fundamental right which the state can only deny for a compelling reason.

Furthermore, we can conceive of even less justification for denial of this right than was advanced to justify denial of access to the courts. Marriage between two adults, one incarcerated, the other at liberty, may be of questionable value to the participants, but it does not appear to infringe on any valid state interest.

Originally, preventing felons from marrying may have been justified on the ground that propagation of the race required that marriage provide at least a likelihood of procreation. However persuasive that argument may once have been, now that the future of humanity appears intrinsically tied in with limiting population growth, it is much less convincing.

Moreover, the state obviously needs not fear that such a union will result in offspring (which in the absence of the father it might be obliged to support) without its acquiescence. If conjugal visits should later be instituted in state prisons, there is no apparent reason why the state should have a greater interest in preventing offspring of a post-confinement than a pre-confinement marriage.

Accordingly, the state's interest in depriving an inmate of the right to marry appears limited to the extremely minor administrative inconvenience which is entailed in arranging for his participation in the ceremony. This justification is insufficient to preclude creation of a *substantial constitutional question* by deprivation of as fundamental a right as we have here.

Accordingly, the Chief Judge of the Circuit will be requested to submit the issue of the constitutionality of this aspect of §§ 79 and 79–a to the already convened three-judge court.

The class action determination made in our earlier memorandum is modified to include felons confined in the New York State prison system who desire to marry, but cannot do so because of §§ 79 and 79–a.

It is so ordered.