No. 73–5359. IN RE GOALEN. Appeal from Sup. Ct. Utah dismissed for want of jurisdiction. Treating the papers whereon the appeal was taken as a petition for writ of certiorari, certiorari denied.

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join, dissenting.

Ronald Easthope, currently an inmate in the Utah State Prison, and appellant Ann Goalen desire to marry. Both are of legal age and are competent to enter into

marriage under state law. Section 76–1–36, Utah Code Ann. (1953), provides:

> "A sentence of imprisonment in the state prison for any term less than for life suspends all civil rights of the person so sentenced during such imprisonment, and forfeits all private trusts and all public offices, authority or power."

In implementation of this statute, the Utah State Board of Corrections promulgated Policy No. 36:

> "It shall be the policy of the Board of Corrections that the Warden may, upon the recommendation of the treatment team, authorize inmates nearing their release dates to marry."

This policy has been interpreted and applied by the state corrections officials to permit marriage by an inmate only when he is within six months of release if the marriage is recommended by the treatment team. Easthope and appellant conveyed their desire to marry to the warden of the Utah State Prison, who determined that Easthope was not within the terms of the policy and denied permission for the marriage to take place. Appellant then brought this action for mandamus in the state courts to require the warden to sanction the marriage.

Appellant contends that the freedom to marry is constitutionally protected and that the State of Utah cannot prohibit her marriage to Easthope in the absence of some compelling state interest. The interest that the State has asserted in support of its policy is that the denial of such civil rights, in conjunction with their gradual return to the convict, "acts as an incentive for the convict to aid in his own rehabilitation." The Utah courts have denied the appellant any relief, and the State Supreme Court explicitly rejected the appellant's constitutional claim.

In *Loving* v. *Virginia*, 388 U. S. 1 (1967), the Court expressly recognized that the right to marry is one of the fundamental liberties embodied in the Due Process Clause of the Fourteenth Amendment. See also *Skinner* v. *Oklahoma*, 316 U. S. 535, 541 (1942). Just last Term, the Court reaffirmed the principle of those cases. *Roe* v. *Wade*, 410 U. S. 113 (1973). The extent to which this right may be diluted for one in prison is something the Court has never decided. In this case the State asserts no security or discipline problems that would arise by permitting the marriage. The State's only interest appears to be to utilize the wholesale denial and subsequent "gradual return" of prisoners' civil rights as an incentive to encourage their cooperation in corrective programs. While this may or may not constitute good psychology and sound corrections policy, I think there is a serious question whether this state policy is sufficient to overcome the appellant's constitutional claim.

I would not, however, note probable jurisdiction and set this case for oral argument. The State has suggested that the issue presented may well have been mooted when Utah Code Ann. § 76–1–36 (1953), on which Policy No. 36 was predicated, was recently repealed by the legislature. Accordingly, I would vacate the judgment of the Utah Supreme Court and remand the case to that court to consider whether the repeal of the statute has operated to nullify the Board of Corrections' Policy No. 36.