**Colleen SALISBURY et al., Plaintiffs,**

**v.**

**Robert LIST et al., Defendants.**

**Civ. No. R–79–250–ECR.**

United States District Court,
D. Nevada.

Oct. 7, 1980.

Robert M. Sader, Reno, Nev., for plaintiffs.

Richard H. Bryan, Atty. Gen. by Ernest E. Adler, Deputy Atty. Gen., Carson City, Nev., for defendants.

## MEMORANDUM DECISION

REED, District Judge.

The complaint in this case alleges violation of civil rights under 42 U.S.C. § 1983, conspiracy to violate civil rights under 42 U.S.C. § 1985, and the unconstitutionality of Procedure No. 314 ("Inmate Marriage Procedure") found in the Nevada Department of Prisons Procedure Manual.

The matter has come before the Court on the plaintiffs' motion for partial summary judgment. They seek a determination of the issue of the constitutionality of said Procedure, asking, among other things, for a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

Plaintiff Colleen Salisbury has requested the defendants to permit her to marry Jimmy Dale Owens, an inmate of the Northern Nevada Correctional Center (the Prison). Mr. Owens is serving a term of life without possibility of parole after his conviction for murder. The defendants have denied the request for lack of a strong, compelling reason to grant permission to marry.

Plaintiff Leslie LeFebvre has requested permission to marry inmate Larry Leaders, who is serving a 50–year term for second–degree murder. Approximately forty years remain to be served. Permission was granted for the marriage ceremony to be performed but only the day before Leaders will be released from the Prison.

Nevada Revised Statutes sec. 209.361 directs the Director of the Nevada Department of Prisons, with the approval of the Board of State Prison Commissioners, to adopt such regulations as are necessary to maintain proper custody of an offender, to prevent escapes and to maintain good order and discipline. Apparently the "Inmate Marriage Procedure" has been promulgated as such a regulation.

Said Procedure No. 314 declares, as a general policy, that the Director "may permit an inmate to marry when legal and institutional requirements have been met and it appears that the union will be constructive in effect on both parties." Three marriages were permitted at the Prison between January 1, 1978, and April 15, 1980.

The legal requirements consist of compliance with all State requirements to obtain a marriage license.

The "institutional requirements" are five–fold:

1. Both parties must be at least eighteen years of age;

2. The couple may not be of the same sex;

3. The parties must have known each other at least one year prior to the inmate's incarceration;

4. Psychiatric clearance will be required for an inmate who has a history of either violence directed against a member of the opposite sex or sex–related offenses; and

5. "Couple must present strong, compelling reasons for permission to be granted prior to release."

Neither couple here involved knew each other at all prior to the inmates' incarcerations. The plaintiffs met the inmates while the plaintiffs were engaged in civilian employment within the Prison. Nevertheless, the defendants have not cited the one–year prior acquaintanceship requirement as a reason not to grant permission for immediate marriage.

An affidavit of the Director of the Nevada Department of Prisons states that inmate Owens is serving time for a crime involving sexual abuse and violence against a woman. However, answers to interrogatories do not rely upon a lack of psychiatric clearance as a reason to deny permission to marry. The answers indicate that such clearance was not necessary "since there was no prima facie showing that marriage would aid in his (inmate Owens') rehabilitation or promote the security of the institution."

The answers to interrogatories and the defendants' response to the motion for partial summary judgment indicate that the one–year acquaintanceship requirement is designed to help thwart the inmate from taking property from the outsider. If the outsider only knows the inmate from meeting him in prison, the outsider hasn't had a proper opportunity to see how the inmate would really behave in an uncontrolled environment. Since various fraudulent schemes already have been perpetrated by inmates while within the Prison, the defendants are apprehensive that some inmates would marry only to obtain community property earned by their spouses. Procedure No. 314 is meant to guard against such a happening. Further, the defendants point out, the likelihood of separation and divorce is great when the couple never knew each other outside prison walls. Separation and divorce tend to have a negative impact on an inmate and his rehabilitation.

The defendants further emphasize that the plaintiffs have been granted all the privileges (including visitation) that the Prison affords actual wives of inmates. Since the very fact of incarceration precludes cohabitation, child rearing and similar aspects of married life, the defendants contend they are merely denying to the plaintiffs the use of State property for the marriage ceremony.

■ The power to regulate marriage is a sovereign function retained by the states; it has not been granted to the federal government. *O'Neill v. Dent*, 364 F.Supp. 565 (E.D.N.Y.1973). The state legislatures may control the qualifications of the contracting parties, the forms or procedures necessary to solemnize the marriage, the duties and obligations it creates, its effect upon property rights, and the grounds for dissolution. Id.; *Maynard v. Hill*, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888). In fact, a state may prohibit marriage for such reasons as consanguinity, immature age, presence of venereal disease, or to prevent bigamy. Stewart, J., concurring in *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Nevada statute sets forth requirements as to age, consanguinity, existing marital status, and procedure for solemnization (NRS 122.020), as well as mental competency (NRS 125.330). Nevertheless, the extent of state regulation is subject to constitutional limitations. *O'Neill v. Dent*, supra; *Johnson v. Rockefeller*, 58 F.R.D. 42 (S.D.N.Y.1973). A state may deny the right to marry only for compelling reasons. Id.

Some courts have upheld legislation or regulations that forbade marriage of prison inmates (*Hudson v. Rhodes*, 579 F.2d 46 (6th Cir. 1978)) or made permission to marry discretionary with the prison administrators (*Polmaskitch v. United States*, 436 F.Supp. 527 (W.D.Okl.1977)). An appeal from the refusal of a state prison warden, acting under prison regulations, to permit a prisoner to marry was dismissed by the U. S. Supreme Court for want of jurisdiction. *In*

*re Goalen,* 414 U.S. 1148, 94 S.Ct. 905, 39 L.Ed.2d 104 (1974). This indicated a belief that no federal constitutional question was raised by such refusal.

On the other hand, the supplemental opinion in *Johnson v. Rockefeller,* 58 F.R.D. 42 (S.D.N.Y.1973) declared that: "Marriage between two adults, one incarcerated, the other at liberty, may be of questionable value to the participants, but it does not appear to infringe on any valid state interest." Id., at 52. The only benefit the state was seen to derive from denial of the right to marry was avoidance of "the extremely minor administrative inconvenience which is entailed in arranging for his (the prisoner's) participation in the ceremony." Ibid.

The same case went to a three–judge federal court which held, however, that the New York Civil Rights Law was constitutional insofar as it declared a person sentenced to life imprisonment civilly dead, so that he might not marry. *Johnson v. Rockefeller,* 365 F.Supp. 377 (S.D.N.Y.1973), aff'd without opinion sub nom. *Butler v. Wilson, Governor of New York,* 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974). The three–judge court explained that the prisoner was only being deprived of the formal ceremony of marriage, since his incarceration precluded enjoyment of the aspects of marriage which bring the relationship under constitutional protection. The opinion of Lasker, J., concurring in part and dissenting in part, disagreed with the conclusion that only the formal solemnization ceremony was being denied the prisoner. Judge Lasker felt that the non–tangible devotion of man and wife, and the emotional support derived therefrom, are important factors. Also, the existence of the marriage helps the prisoner to endure his incarceration, with the hope that he may be released by parole or commutation. Except for the marriage, the outsider probably would be tempted to build her life with another man, and the prisoner realizes this.

What the three–judge court really decided was that the New York Legislature had the right to deny marriage to a person convicted of a crime calling for life imprisonment, as an additional punishment for the offense. Compare *In re Carrafa,* 77 Cal.App.3d 788, 143 Cal.Rptr. 848 (1978), where the California court held that prison officials could not deny a prisoner the right to marry where a State civil rights statute specified that prisoners shall have the right to marry.

Nevada does not have a civil rights (or "civil death") statute per se covering marriage of prisoners. Yet, NRS 212.010(2) directs, among other things: "A conviction of crime shall not work a forfeiture of any property, real or personal, or of any right or interest therein." By reason of this statutory provision, the murderer was allowed to inherit from his victim in *Wilson v. Randolph,* 50 Nev. 371, 261 P. 654 (1927). The right of inheritance was deemed to be a civil right existing by virtue of law. Marriage, also, is a civil right. *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The right to marry has been recognized by the Nevada Legislature. Chapter 122 of Nevada Revised Statutes. It seems to follow, then, that the defendants' refusal to permit the marriage requested by the plaintiffs finds no direct support in State statute.

Nevada law does deprive a convicted felon of some civil rights; e. g., NRS 293.540 extinguishes the right to vote. Further, NRS 213.155 and 213.157 provide for the restoration of civil rights after parole and after the sentence has been served. Nevertheless, the right of a prisoner to marry has not been either specifically granted or specifically denied by the State Legislature.

■ The right to marry is a fundamental right protected by the U. S. Constitution. *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Yet—"Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody." *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); see also NRS 209.361. Simply be-

cause prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. They may require limitation so that institutional security may be maintained and internal order and discipline preserved. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The *Bell* case emphasizes that courts are ill–equipped to deal with the day–to–day operations of a prison. Therefore, prison administrators should be accorded deference in the adoption and execution of policies and practices that in their judgment are needed to maintain security, order and discipline.

> "This does not mean that constitutional rights are not to be scrupulously observed. It does mean, however, that the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution .... The wide range of 'judgment calls' that meet constitutional and statutory requirements are confided to officials outside of the Judicial Branch of Government." *Bell v. Wolfish,* supra at 99 S.Ct. 1886.

■ Where a fundamental right is involved, the inquiry of the court does not end upon a finding that the regulation (e. g., Procedure No. 314) is reasonably related to its enabling legislation (e. g., NRS 209.-361). See *Southwestern Community v. Community Services, etc.,* 462 F.Supp. 289 (S.D.W.Va.1978). A regulation that significantly interferes with the exercise of a fundamental right requires rigorous scrutiny and must be supported by a compelling interest and be closely tailored to effectuate only that interest. Id.; *Zablocki v. Redhail,* supra; *Shakman v. Democratic Organization of Cook Cty.,* 481 F.Supp. 1315 (N.D.Ill. 1979).

■ When the right to marry is involved, a regulation significantly interferes with exercise of the right when it directly and substantially interferes with the very decision to marry or not to marry. *Zablocki v. Redhail,* supra. That is, the freedom of choice is intruded upon. Certainly, Procedure No. 314 constitutes direct and substantial interference with the freedom of choice of the plaintiffs herein.

■ The right to marry is part of the fundamental right of privacy implicit in the Fourteenth Amendment's Due Process Clause. Id. However, it is not the individual's interest in avoiding disclosure of personal matters (confidentiality) that is involved, but rather the individual's interest in making certain kinds of important decisions without unjustified governmental interference (autonomy). Id.; see also *Plante v. Gonzalez,* 575 F.2d 1119 (5th Cir. 1978). Both *Zablocki* and *Plante* declare that decisions related to marriage are within the Fourteenth Amendment's protection. Where an important state interest affects constitutional rights, the state must choose a way to achieve its goals with the least burden on the constitutionally protected activity. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

■ The *Zablocki* case must be considered as the landmark decision to consider in resolving the instant motion. There, a state statute required that an applicant for a marriage license prove that he was in compliance with any existing child support order against him before the license could be granted. One of the purposes of the statute was to furnish an opportunity to counsel with the applicant as to the necessity of fulfilling his prior support obligations, before he entered into a new marriage that could give rise to further support obligations. The same objective is served by Procedure No. 314. It provides an opportunity for the prison officials to warn the free person that the inmate may only be looking to acquire community property interests.

> "Even assuming that counseling does take place–a fact as to which there is no evidence in the record–this interest obviously cannot support the withholding of court permission to marry once counseling is completed." *Zablocki v. Redhail,* 434 U.S. 374, 389, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978).

The same must hold true for Procedure No. 314. If the brides–to–be disagree with the prison officials' conclusion that the inmates are only out to defraud, those officials may not enforce their opinions by refusing permission to marry. A compelling state interest is not involved.

Likewise, the only security, order and discipline problems (these *are* compelling state interests) that can be anticipated involve security at the wedding ceremonies themselves. This is a relatively minor inconvenience. Since the plaintiffs already have been granted the same visitation privileges as wives, no additional security problems would arise by reason of the solemnization of the marriages. If the plaintiffs should become a security risk after marriage, their visitation privileges may be restricted or revoked despite their marital status. See *In re Carrafa*, 77 Cal.App.3d 788, 143 Cal. Rptr. 848 (1978). In other words, there are less burdensome ways to protect Nevada's legitimate concerns as to security than by forbidding the marriages.

In light of the foregoing, the plaintiffs' motion for a partial summary judgment will be granted as to the prayer of the Third Claim for Relief contained in their Amended Complaint asking for a declaratory judgment that the policy and practice of the defendants as to inmate marriages is unconstitutional and that the plaintiffs have a right to marry prison inmates. This is not to say there could never be a valid regulation of prisoner marriage based on enabling legislation reflecting a compelling state interest.

No injunctive relief will be granted at this time. It is assumed that the defendants will promptly amend the offending Procedure No. 314 in conformity with this Memorandum Decision and the aforementioned partial summary judgment. This denial of injunctive relief at this time is without prejudice to the plaintiffs' right to seek such relief in the future, pursuant to 28 U.S.C. § 2202, if necessary to enforce their rights as declared in said partial summary judgment.

The motion for partial summary judgment is denied insofar as it seeks a determination that the plaintiffs' civil rights have been infringed by the defendants, as a predicate for assessment of money damages. There remains substantial controversy as to this issue.